UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
____

DONOVAN YOUNG,

        Plaintiff,                     Case No. 2:21-cv-148

v.                                               Honorable Paul L. Maloney

MICHAEL K. BEAUDOIN et al.,

        Defendants.
_____/

**OPINION**

      This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's amended complaint[1] for failure to state a claim against

---

[1] On July 16, 2021, Plaintiff filed a motion to amend his complaint (ECF No. 5) but did not file a proposed amended complaint with his motion. In an order entered October 5, 2021, the Court directed Plaintiff to file his amended complaint within 28 days. (ECF No. 9.) The Court advised Plaintiff that if he did not file an amended complaint, the Court would "proceed to address only the claims in Plaintiff's original complaint." (*Id.*, PageID.42.) Plaintiff subsequently filed a motion for reconsideration. (ECF No. 10.) In an order entered October 18, 2021, the Court construed his motion as a motion for an extension of time to file an amended complaint and denied the motion. (ECF No. 12.) The Court directed Plaintiff to file his amended complaint by November 2, 2021. (*Id.*, PageID.51.) Plaintiff filed his amended complaint on November 1, 2021. (ECF No. 13.) The Federal Rules of Civil Procedure provide that a party may amend its pleading once as a matter of course within 21 days after service of the complaint. *See* Fed. R.

Defendant Dawdy. The Court will also dismiss, for failure to state a claim, Plaintiff's Fourteenth Amendment claims against Defendants Beaudoin and Harju. Plaintiff's Eighth Amendment claims against Defendants Beaudoin and Harju remain in the case.

## Discussion

**I.     Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Ionia Correctional Facility (ICF) in Ionia, Ionia County, Michigan. The events about which he complains, however, occurred at the Baraga Correctional Facility (AMF) in Baraga, Baraga County, Michigan. Plaintiff sues MDOC Director of Mental Health Services David Dawdy and psychiatrists/psychologists Michael K. Beaudoin and Dale A. Harju.

Plaintiff alleges that starting when he was four years old, he received treatment from psychiatrists, psychologists, and other mental health professionals. (ECF No. 13, PageID.54–55.) These professionals have diagnosed Plaintiff with: (1) attention deficit hyperactivity disorder; (2) post-traumatic stress disorder; (3) oppositional defiant disorder; (4) adjustment "dismixed" disturbance emotions/conduct disorder; (5) conduct and mood disorder; (6) bipolar disorder; and (7) severe depression. (*Id.*, PageID.55.) Plaintiff has been prescribed numerous medications to treat these mental illnesses. (*Id.*, PageID.55–56.)

On May 8, 2012, Plaintiff became an MDOC inmate. (*Id.*, PageID.56.) He told MDOC health care providers, including Defendants "about his mental illnesses and the medications used to treat his illnesses." (*Id.*) Plaintiff claims that Defendants and all other staff told him: (1) nothing was wrong with him; (2) he was a manipulator; (3) the providers treating him before he was incarcerated "were fraudulent and abusing him by providing him with

---

Civ. P. 15(a)(1). The Court, therefore, will grant Plaintiff's motion to amend. (ECF No. 5.) Plaintiff's amended complaint (ECF No. 13) is, therefore, the operative pleading in this matter.

2

medications that he didn't need"; (4) he was misdiagnosed; (5) no medications could help him; and (6) quit asking for mental health treatment because none would be provided.  (*Id.*)

Plaintiff has told MDOC providers, including Defendants, that "his mental health condition was deteriorating because of the lack of treatment and medications."  (*Id.*, PageID.57.) According to Plaintiff, the lack of treatment and medication has caused his "mental health condition to spiral out of control, which resulted in the following problems":  (1) negative confrontations between Plaintiff, staff, and other prisoners; (2) Plaintiff's placement on disciplinary sanctions, such as loss of privileges (LOP) status and confinement to a cell/room; (3) Plaintiff's classification as a Level V inmate; (4) Plaintiff's repeated classification to administrative segregation; (5) Plaintiff being subjected to "potential criminal, civil, and administrative charges/claims because of his disciplinary problems"; (6) Plaintiff "repeatedly being placed in volatile and hostile situations and environments"; and (7) Plaintiff being repeatedly assaulted by other prisoners.  (*Id.*, PageID.57–58.)  Plaintiff has also "informed the Defendants numerous times that he is having . . . suicidal thoughts."  (*Id.*, PageID.58.)  He avers that his condition continues to deteriorate, which "continues to place him in dangerous situations because he cannot control his behavior when he is not being properly treated."  (*Id.*)

Plaintiff has attached two affidavits to his amended complaint.  In the first, Plaintiff reiterates the allegations set forth above.  (ECF No. 13-1.)  In the second, Plaintiff "want[s] to give clarity" to his claims.  (ECF No. 13-2, PageID.76.)  Plaintiff avers that his presentence investigation report (PSI) indicates that he does have mental health issues, and that his PSI contained enough information "about [his] mental health problems that action should have been taken immediately to get [him] treatment."  (*Id.*, PageID.77.)  Plaintiff alleges that he has been treated "inhumanely" and that Defendants "played a big part" in constantly telling him that he had

3

"no mental health problems so stop faking and asking for help." (*Id.*) Plaintiff claims that he has been slice in the face with a razor blade and subsequently put in solitary confinement for possessing a weapon to protect himself. (*Id.*, PageID.77–78.) He avers that he has "spent more time in solitary confinement [than in] general population," and that he has thought about committing suicide on numerous occasions. (*Id.*, PageID.78.) Plaintiff sought help from a gang for protection and subsequently was labeled as being part of a Security Threat Group (STG). (*Id.*, PageID.79.)

Plaintiff told a psychiatrist that he is "supposed to be on meds and in some type of mental health treatment." (*Id.*, PageID.80.) He claims that instead of providing treatment, that individual "put in his report that [Plaintiff] was part of a gang, etc. as an attempt to discredit [him] and [his] mental health pleas for help." (*Id.*) Plaintiff avers that the psychologists and the STG Coordinator worked together to keep him at AMF, the "only level 5 in Michigan without any mental health programs or psychiatrists." (*Id.*) Plaintiff filed numerous grievances, and he sent letters to Defendant Dawdy. (*Id.*, PageID.80–81.)

Plaintiff goes on to allege that he has lost ten loved ones during the COVID-19 pandemic. (*Id.*, PageID.81.) He told a psychologist that he was "depressed and having bad anxiety and panic attacks." (*Id.*) Plaintiff was ignored, but his symptoms started affecting his physical health, so he saw Dr. Patricia Lewis for shortness of breath and rapid heartbeat. (*Id.*) Dr. Lewis prescribed an inhaler and said that she was going to refer Plaintiff to mental health because "she believed it was anxiety and that [his] problems were more so mental and not medical." (*Id.*, PageID.82.)

On May 27, 2021, Defendant Harju came to see Plaintiff, and Plaintiff "told him what [he] was going through and [he] also told him that [he] obtained a small portion of [his] mental health files from the community." (*Id.*, PageID.82–83.) Plaintiff claims that individual's

4

"eyes got big as if they were about to pop out of his head." (*Id.*, PageID.82.) The next day, that individual came to take Plaintiff's files, and Plaintiff alleges "he never did come back or return [the] files." (*Id.*) Plaintiff claims that after Defendant Harju took his files, he made notations in Plaintiff's MDOC records that Plaintiff "was on Ritalin from age 6 to 13, which was false." (*Id.*, PageID.83.) Plaintiff also claims that Defendant Harju added that Plaintiff was diagnosed with ADHD and had been in various facilities. (*Id.*)

Plaintiff told a psychologist that he was experiencing blackouts and time lapses, as well as hearing voices. (*Id.*, PageID.84.) Plaintiff also indicated experiencing mood swings and "real bad anxiety." (*Id.*) He was ignored. (*Id.*) Plaintiff alleges that he was in "numerous boys' homes due to [his] mental illness and lack of social skills," and that he suffered severe abuse from his father when he was growing up. (*Id.*, PageID.84–86.) Despite this, he avers that Defendants Beaudoin and Harju "tell [him] that there is nothing wrong with [him], and they don't believe [him]." (*Id.*, PageID.86.)

Plaintiff alleges that he told Defendants Beaudoin and Harju "everything that [he has] mentioned" in the second affidavit and "told them both that if they obtained [his] mental health files from the community, and reviewed them, they would see that all of this information is documented in those files." (*Id.*) They told Plaintiff it was "not on them to get these documents from the community." (*Id.*) Plaintiff claims that he also sent "numerous letters" to Defendant Dawdy and "told him everything that [he has] mentioned." (*Id.*, PageID.87.) Plaintiff "repeatedly asked him to intervene and correct these problems." (*Id.*) He avers that Defendant Dawdy "did absolutely nothing to help [him] or protect [him]." (*Id.*)

5

Based on the foregoing, Plaintiff asserts violations of his Eighth and Fourteenth Amendment rights. (ECF No. 13, PageID.54.) Plaintiff seeks compensatory and punitive damages, as well as various forms of injunctive relief. (*Id.*, PageID.62–66.)

## II. Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed

by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

    A.    **Eighth Amendment Claims**

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). The Eighth Amendment requires prison officials to provide medically necessary mental health treatment as well. *See id.* at 103; *Government of the Virgin Islands v. Martinez*, 239 F.3d 293, 301 (3d Cir. 2001); *Lay v. Norris*, No. 88-5757, 1989 WL 62498, at *4 (6th Cir. June 13, 1989); *Potter v. Davis*, No. 82-5783, 1985 WL 13129, at * 2 (6th Cir. April 26, 1985). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Estelle*, 429 U.S. at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person."

*Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer,* 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence . . . : A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842).

1. **Defendant Dawdy**

Plaintiff alleges that he sent numerous letters to Defendant Dawdy, Director of Mental Health Care for the MDOC, regarding the lack of mental health treatment. Plaintiff avers that he repeatedly asked Defendant Dawdy to "intervene and correct these problems. He did absolutely nothing to help [Plaintiff] or protect [him]." (ECF No. 13-2, PageID.87.)

Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310

8

F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

The Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee*, 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300, and citing *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008)); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (citing *Rizzo v. Goode*, 423 U.S. 362, 375–76 (1976), and *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993); *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989).

Here, Plaintiff fails to allege any facts plausibly showing that Defendant Dawdy encouraged or condoned the conduct of their subordinates, or authorized, approved, or knowingly acquiesced in the conduct. At most, Plaintiff avers that he mailed letters regarding his issues to Defendant Dawdy, all to no avail. Nothing in the amended complaint, however, suggests that Defendant Dawdy even received and read Plaintiff's letters. Moreover, Plaintiff cannot hold Defendant Dawdy liable for simply failing to act in response to his letters. *See Shehee*, 199 F.3d at 300.

9

Plaintiff's vague and conclusory allegations of supervisory responsibility are insufficient to demonstrate that Defendant Dawdy was personally involved in the events described in Plaintiff's complaint. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555. Because Plaintiff's Eighth Amendment claims against Defendant Dawdy are premised entirely on respondeat superior liability for the unconstitutional conduct of others, his action fails to state an Eighth Amendment claim against Defendant Dawdy. His claim, therefore, will be dismissed.

### 2. Defendants Beaudoin and Harju

Throughout his amended complaint, including the attached affidavits, Plaintiff alleges that he made Defendants Beaudoin and Harju aware of his past mental health treatment and medications and the issues he was experiencing during his incarceration because of a lack of treatment. Plaintiff alleges that Defendants Beaudoin and Harju refused to obtain his records from outside providers and completely ignored his complaints. Plaintiff, therefore, has sufficiently stated an Eighth Amendment claim for deliberate indifference to serious mental health needs against Defendants Beaudoin and Harju.

### B.  Fourteenth Amendment Claims

Plaintiff claims that Defendants' conduct violated the Fourteenth Amendment's Due Process Clause. (ECF No. 13, PageID.54.) Presumably, Plaintiff intends to raise a substantive due process claim.[2]

---

[2] Alternatively, Plaintiff may refer to the Fourteenth Amendment solely for its incorporation of the relevant protections under the Eighth Amendment, *see Robinson v. California*, 370 U.S. 660, 667 (1962), as applied to the States. In that event, no further discussion of the Fourteenth Amendment claim is required.

The Due Process Clause of the Fourteenth Amendment prohibits states from "depriv[ing] any person of life, liberty, or property, without due process of law[.]" U.S. Const. amend. XIV. "Substantive due process 'prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty.'" *Prater v. City of Burnside*, 289 F.3d 417, 431 (6th Cir. 2002) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)). "Substantive due process . . . serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the fairness of the procedures used." *Pittman v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, 640 F.3d 716, 728 (6th Cir. 2011) (quoting *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996)). "Conduct shocks the conscience if it 'violates the "decencies of civilized conduct."'" *Range v. Douglas*, 763 F.3d 573, 589 (6th Cir. 2014) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998) (quoting *Rochin v. California*, 342 U.S. 165, 172-73 (1952))).

"Where a particular [a]mendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that [a]mendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 269 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 394 (1989) (holding that the Fourth Amendment, not substantive due process, provides the standard for analyzing claims involving unreasonable search or seizure of free citizens, and the Eighth Amendment provides the standard for such searches of prisoners), *overruled on other grounds by Saucier v. Katz*, 533 U.S. 194 (2001)). If such an amendment exists, the substantive due process claim is properly dismissed. *Heike v. Guevara*, 519 F. App'x 911, 923 (6th Cir. 2013).

In this case, the Eighth Amendment provides an explicit source of constitutional protection to Plaintiff concerning his mental health claims. *See Graham, 490 U.S. at 394 (*citing

11

*Whitley v. Albers*, 475 U.S. 312, 327 (1986) (rejecting a substantive due process claim where the Eighth Amendment supplies a textual source for prison-condition claims)); *Dodson v. Wilkinson*, 304 F. App'x 434, 438 (6th Cir. 2008) (because the Eighth Amendment supplies the explicit textual source of constitutional protection for claims governing a prisoner's health and safety, the plaintiff's substantive due process claim was subject to dismissal). Thus, the standard applicable to that source, the Eighth Amendment right to be free from cruel and unusual punishment, and not the more generalized notion of substantive due process, should be applied. Consequently, Plaintiff's substantive due process claim will be dismissed.

## Conclusion

For the reasons set forth above, the Court will grant Plaintiff's motion to amend his complaint. (ECF No. 5.) Plaintiff's amended complaint (ECF No. 13) is, therefore, the operative pleading in this matter. Having conducted the review of the amended complaint required by the Prison Litigation Reform Act, the Court determines that Defendant Dawdy will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, Plaintiff's Fourteenth Amendment claims, against Defendants Beaudoin and Harju. Plaintiff's Eighth Amendment claims against Defendants Beaudoin and Harju remain in the case.

An order consistent with this opinion will be entered.

Dated:  February 9, 2022                   /s/ Paul L. Maloney
                                            Paul L. Maloney
                                            United States District Judge